Good morning, Your Honors. May it please the Court, my name is Susan Mitchell and I represent the appellant in this case, Suntrust Bank. I would like to reserve five minutes for rebuttal. The UCC's five-year restriction on perpetual letters of credit was intended by the drafters as a mechanism to protect the banking system against undue risk. And Golden West's literalist interpretation of that section would introduce uncertainty into the banking system. Subject to the Court's questions, I would like to address two issues this morning that we believe are critical to resolution of this appeal. First, the reasons why the letter of credit at issue is subject to the five-year durational limit of 5106d. And second, if the Court does reach the issue of damages, why the remedies set forth in UCC Section 5111 are exclusive and may not be supplemented by common law breach of contract remedies such as consequential damages. The facts of this case actually illustrate perfectly why elevating form over substance in interpreting 5106d would effectively nullify the statute. In this case, the letter of credit has an expiry date, but that date is subject to one-year renewals without limitation by Golden West, the beneficiary, with no power of the issuer to control that or terminate the letter of credit. The one-year expiry date thus is illusory because the credit can be renewed at the option of the beneficiary with no control by the issuer. The credit literally can continue perpetually by its terms on the four corners of the instrument. Specific words such as perpetual or forever or always cannot be the touchstone of what 5106d requires. We must look to what the letter of credit actually presents. The durational limits of 5106d are so strong that the drafters prescribe that it was one of the few sections in Article V that could not be waived by mutual agreement. Given that policy, it makes no sense to permit parties to draft around 5106d by creating terms that allow the credit to operate perpetually without using that precise word. Why do you say it makes no sense? There's a lot of things lawyers do that make no sense, but there's nothing I see in the statute that prevents them from doing this. Now, I grant you it's a surprise that this was written this way, but I had taken that to mean that the drafter was at fault and they can draft anything they want to for the agreement. Why do you say, are you suggesting that the statute forbids this or are you suggesting the statute helps us interpret it? I am suggesting that the statute 5106d imposes a five-year limit on letters of credit that are perpetual. It does not forbid them entirely. It does give them some effect, but it imposes a five-year limit. Do you concede that you can draft a letter of credit which could be renewed every year? There is an exception to 5106d that's reflected in the second sentence of comment 4 for what the industry calls evergreen letters. And those are letters of credit that can be renewed annually, but the issuer retains the option to cancel or terminate them. You say the issuer retains. Is that what is the usual practice or is it statutorily required? That is a not uncommon practice for letters of credit in the industry. But it isn't necessary that a person or a lawyer has to follow the usual practice. They could draft something differently if they wanted to, couldn't they? I don't agree with that, Your Honor. The Independence Principle, which is articulated in UCC 5103d, states that we must look to the four corners of the instrument, the letter of credit itself, to determine its effect. We don't care about the intent of the drafters unless there's some ambiguity in the terms. 5103c says that we cannot waive 5106d. In other words, the UCC says you cannot waive the five-year limitation on letters of credit that are perpetual. So if the parties mistakenly or even deliberately try to draft around 5106d and create terms that allow the letter of credit to operate in perpetuity, 5106d kicks in and limits the term of that credit to five years, no matter what the party's intended. It really doesn't say a letter of credit that is perpetual. It says a letter of credit that states it is perpetual. So it's somewhat different than being perpetual under some analysis. And when I look at the four corners of this letter of credit, it doesn't state that it's perpetual. It has a form of words that you're interpreting as being perpetual, but aren't there many different forms of words that somebody could interpret as being perpetual, and then the parties to the letter of credit won't know what its actual expiration date is? I think that's a very important point, Your Honor. The statute talks about stating that it is perpetual. It doesn't say how the letter of credit states that it is perpetual. And even Golden West agrees that the letter of credit need not use the precise, specific word perpetual. Golden West says in its brief at page 30, you can use words like forever or always or even combination of words. One of the examples that Golden West suggests that would be perpetual would be a statement in a letter of credit that says, this letter of credit shall always be available for presentation at our counters. I think that the Institute of International Banking Law and Practice, which was a lead player in the UCC revisions of 1995, makes a very good point in its amicus brief at 402 of the ER, that we must look for a principled reason why a letter of credit is perpetual if we're not going to limit it to a letter of credit that uses that specific word. And I would argue to you that there is no principled difference between a letter of credit that says this will always be available for presentation and a letter of credit such as we have here that says this letter of credit may be renewed indefinitely at the option of the beneficiary with no power of the issuer to terminate it. If they said at the option of issuer, it would be valid? If the issuer had the control to permit the letter of credit to continue or to terminate it, that would be an evergreen letter, and that is the specific exception to 5106 DER. And the answer to the question is yes? Yes. Then what statute do you rely on that if it's in the power of the issuer, it's okay, but if it's in the power of the beneficiary, it's not? That is what 5106 says. 5106 D creates a broad limitation, and it specifies one exception. And that exception is consistent with the concerns of the drafters. The drafters were concerned that we not have uncertainty and undue risk in the system. You know, drafters sort of reminds me of legislative history. Is there anything in the face of the statute that verifies the position you've taken? Nothing other than the structure of the statute itself. Okay. Counsel, let me get my question on the table or my comment. What bothers me about Appellant's side of this case is that when you opened, you suggested that the interpretation of the district court here, permitting this letter of credit to be renewed, you know, year by year, somehow would interfere with the bank's ability or the banking industry's ability to limit risk and protect itself. However, it strikes me that the bank could have protected itself easily by negotiating an agreement with different language. It could have negotiated an agreement with a completely fixed term of X years, whatever it wanted. Or it could have negotiated an agreement with language in it that said the provision is perpetual. It could have stated it's perpetual, invoking the five-year limit. I guess there's not much reason it would take that tack. But, I mean, it could have protected itself by negotiation. So the question in my mind is, given the language of the statute and the terms states that it's perpetual, do we have an interpretive license to give this sort of a functional interpretation, which is what your client and the amicus would like us to do? But how can we do that with a letter of credit, which historically has been given a very literal interpretation? Your Honor, I think that a very literal interpretation of this letter of credit does disclose that it is stating that it is perpetual. And I do agree with you. The bank could have negotiated a letter of credit with a fixed termination date. It could have negotiated a letter of credit under which the issuer retained control. But it did not do that. It issued the letter of credit as a mistake. And 5106D is designed to address that situation. It does not speak of who is at fault in issuance of a letter that is infinite in duration. It simply limits those letters to five years to protect a certain legal system. Of course, you know, if the letter had said, if it literally said it was a perpetual letter, it didn't have those mechanisms where it's got a one-year term, but it can be renewed by the beneficiary, you know, that would be an easy case. If it said this letter shall remain in effect as long as the sun shall shall shine, you know, or until the ends of time or didn't say in perpetuity, but it had the same meaning. But here we do have this kind of odd construction of language. It says it terminates, but it can be renewed. So, you know, we're faced with how much scope we have to interpret that. The part that troubles me with the appellant's side of the case, I guess I've got some things troubling me on the other side, too. But on your side, as people use these letters of credit, you know, all around the world, they have a certain remedy, especially when they may not know or trust their contracting party. And the letter of credit is supposed to be a very certain remedy if the conditions are met. And so I'm somewhat hesitant to think that if the conditions are met and the statute doesn't precisely say to limit it, that we could interpret it functionally to do that. So I wanted to get my concerns on the table so you could fully address them. I have two responses to that, Your Honor. First, it is very important that letters of credit that by their terms can operate indefinitely be subject to 5106D or otherwise that statute has no meaning. Anyone can draft around it. The second point is if you limit 5106D to letters of credit that use words like perpetual or say something like as long as the sun is shining, you will find that parties do draft letters like the one we have here, which is what the UCC seeks to avoid. It is not uncommon for a beneficiary, for whatever reason, to want to have sole control over the duration of the letter of credit. In this case, although we should not look beyond the terms of the letter of credit itself, the underlying transaction discloses that the risk here really could continue indefinitely. What we're talking about in the letter agreement are contingent environmental liabilities for an oil refinery, liabilities that may well go on for 50 years. This is precisely the kind of situation that creates a perpetual obligation, which is what 5106D is designed to address. I guess I don't see how a beneficiary, under your interpretation, would ever know whether the length of the letter of credit, because he wouldn't know whether some court will then interpret the letter of credit as being perpetual, as stating it is perpetual. So the issuer can always come in and argue, well, these words, because of, like in the U.N. Convention, this won't happen or it's based on the presentation of something that hasn't happened yet, it's perpetual, and therefore it actually expires in six years. How do you protect the beneficiary from that sort of issuers taking that sort of position? Well, the simple protection is what the UCC Article V prescribes, which is you should have a fixed termination date or one that is within the control of the issuer. It should say the letter of credit expires March 8, 2008, unless the issuer elects to allow automatic renewal for a one-year period. I think this particular letter of credit very clearly sets forth an obligation that continues without restriction by the issuer. And so is perpetual. The UCC is more concerned with protecting that five-year limit on letters of credit than it is with particular parties' intentions. I'm about out of time, so I will reserve my remarks for rebuttal. Good morning, Your Honors. Dennis B. Arnold, Marjorie E. Lewis, Sarah Powers of Gibson, Dunn & Crutcher. On behalf of Golden West, the Respondent herein, I also want to thank the Court for the indulgence of letting me stand. I'm recovering from back surgery. We have here a case that involves a fairly esoteric letter of credit issue that is also very unlikely ever to repeat itself. At the very outset, I'd like to note that the policy arguments that the Institute, that Professor Clark, and that SunTrust keep trying to throw at you really have no basis in fact. If you rule in favor of the Respondent in this case, there isn't going to be an immediate rush by every bank in the United States to start issuing perpetual letters of credit for a variety of reasons. Issuers aren't interested in doing that. They're not incentivized to do it. Banking regulations that have been in effect since 1996 prevent national banks from doing so. Most state banks try to adhere through state regulators to those ideals. Those regulations would absolutely preclude an issuer from doing what SunTrust did. But yet SunTrust did it and has continued to seek a bailout, if you will, from court after court after court to avoid the consequences of it having issued a letter of credit, which creates an undertaking on its part to strictly comply with drafts put in front of them. Some of what SunTrust did here could also be described as alchemy. They issue a letter of credit in great haste to accommodate a customer. The customer comes in, tells them this is the form. They go ahead and issue it. They somehow speculate that our client drafted that. There's not a shred of evidence in the record that suggests that our client even touched that piece of paper, but it's irrelevant. The bank issued the letter of credit, and under Section 5108 of the UCC, if you issue a letter of credit, you're obligated by statute to observe standard practice of institutions that routinely and customarily issue letters of credit. So an issuer can't just sort of say, I'm fooling around. I'll just take your form. I'll issue it. I'm not responsible. They are responsible. It's their letter of credit. Not too long after they issued this letter of credit with no security, no control over its term, and somehow in a delusional belief that it would be gone in 90 days, somehow the bank figured out over time that, gee, it hadn't made a good deal, and somewhere along the line seized on this great transmogrification where a letter of credit that had been 90 days in their mind, even though the terms didn't suggest that, now is a perpetual letter of credit. I'm impressed by their imagination. I'm also impressed by the fact that in 2004 our client sent a letter to SunTrust. Never got a response. That point in time was seven months, eight months after the five-year date from the issuance of the letter of credit. If SunTrust at that point truly believed the letter was perpetual, they probably had a duty to say so. Their own conduct belies the perpetuity of this letter of credit. In 2001, after a lot of internal pressure from their own credit department, SunTrust sat down with Pat Robertson, the applicant, and said, you've got to get rid of this LC. You've got to move it and take it somewhere else. Pat's response was to file suit through SENCO against Golden West and ultimately get a default judgment all through the three-and-a-half-month period from March of 2001 through mid-July The bank was closely apprised of every step of that. That is shocking and outrageous conduct, clearly at odds with the independence principle, because you had an issuer of a letter of credit actively seeking to subvert its solemn undertaking in the four corners of a letter of credit. That might be shocking conduct, but does that determine the outcome of the case? Your Honor, I think it will, in fact, heavily impact the veracity of the arguments they're making on the merits. How? I don't think you need to reach their conduct. Well, I didn't know how it fit in if I were writing the decision, why I would fit it in other than a footnote for someone who wants to make a TV play out of it. I just don't see how it has any relevance to the ultimate outcome. It was interesting to read, but it strikes me that we have a contract that we can read on its face. We have a statute that we can read on its face, and I don't see where the relevance of that is. Your Honor, I think there's one direct piece of relevance. It's the Murphy case the Ninth Circuit decided 20 years ago that stands absolutely for the proposition that wrongdoing, violating banking regs, doesn't create a defense to an obligation under a letter of credit. Beyond that, I agree with you. This is a TV show. It's sort of the judicial equivalent of is Pat Robertson smarter than everybody at SunTrust. I think the answer is probably yes. But I would clearly agree with you. I don't think it has much of an impact on the perpetuity decision, because the perpetuity issue, as I'm about to get to, is very straightforward and absolutely is not. So I suggest so I understand. What you're saying is that this goes to indicate that all of the parties were considering this letter of credit as live under some guise. Yes, Your Honor, precisely. Opposing counsel mentioned the consequential damages issue. I do not intend to argue that point at all. The reason being that it's entirely moot. We dropped a footnote in our brief. In fact, the state court judgment that our client obtained against CENCO has been paid in full. The dollar-for-dollar reduction provision of the judgment takes effect. There is no longer a consequential damage award. It's gone. It's over. It's moot. There's no reason for the court even to consider that point. Does the record make that clear to us, or do we just take it based on what you're saying right now? Well, I'm certainly making a factual representation. But we did, Your Honor, in our brief, which is part of the record, clearly point out that this would likely be moot because the judgment I saw your footnote in the brief. What I was just trying to understand was whether we can, you know, have record comfort that the event has occurred, so it is moot now. We could certainly file something in the record if there's a way to do that. I did not know how to supplement a trial court record when the case is on appeal. But I assure you our client has. We'll think about that if we need to. Let me just float for you the concern I have with Apelli's case. Please, Your Honor. I did that for the appellant. You know, it seems that the letter of credit does not literally state that it's perpetual or in perpetuity. And it doesn't literally say it goes on forever, in other words. More precisely, it says it ends on a shorter term, but it's subject to renewal by the beneficiary year by year. So I think it might be accurate to say that in substance it creates a perpetual contingent liability. Now, maybe you disagree with that. At least that's how I'm viewing it in economic substance. It doesn't it doesn't by its terms go on forever necessarily. But there's a contingency of renewal by beneficiary that would keep the liability out there. So if that's true, can we functionally interpret or do we have to functionally interpret the statute's limit to say that there just shouldn't be a statute interpretation that permits a contingent bank liability to go on forever? Your Honor, I believe that your question gets right to the heart of this case. If you start to change the concept of what 5106d specifically recites, that is a letter of credit which states that it is perpetual, and get into this theoretical perpetuity, you actually will wreak extraordinary havoc in letter of credit law. Let me give you an example. Apart from messing up the statute, apart from destroying half the phrasing of 5106c, which uses a stated expiration date or an other provision that determines duration, stated, states, same words, you would destroy part of that statute. But let's take a look at a very common letter of credit. It's often used by businessmen. You have somebody who wants to ensure that they get paid for goods they're delivering across a great distance to a strange community. And they happily take a letter of credit that says, upon delivery of the goods, you can draw for the purchase price. With an expiration date that says, because no one knows when the goods are going to be delivered, this letter of credit will expire 90 days after the delivery of the goods. Theoretically, we don't know that the goods will be delivered. We don't know that the goods will even be made. We don't know that the goods could be on a train when a terrorist explodes a bomb and destroys the goods. Theoretically, that letter of credit that says, this letter of credit shall expire 90 days after delivery of the goods, under Suntrust's argument, every issuer of a letter of credit in the United States is going to have a get-out-of-jail-free card. Because they'll be able to take a look at a letter of credit like that, and if they're worried about getting reimbursed upon a draw by their applicant, they're going to say, well, that letter of credit's perpetual. Why? Because, well, we don't know when it's going to expire. We don't know when this is going to happen. Incidentally, a letter of credit drafted in that fashion is perfectly valid under the UCC. The statements made by the amicus, the statements made by our opposition to the effect that Article V was intended to promote safety and protect issuers, is wrong. You don't have to be a bank to issue a letter of credit. Each of you, as judges, could issue a letter of credit. Increasingly, it's very common for manufacturers now to issue letters of credit to parties in other countries. There's nothing in the official comment to Article V that even hints at preferring issuers over beneficiaries or applicants. The entire focus of Article V is to promote speed, certainty, and the flexibility of letters of credit as a useful mercantile tool. Anything that interferes with that, that is taking a statute, ignoring its plain language, reading things into it that aren't there, possibly giving issuers the right to attack letter of credit after letter of credit just because of a theoretical, functional possibility of perpetuity, letter of credit law doesn't need that. And there really is another significant disconnect. In 1996, the Feds issued extensive regulations governing letters of credit. They only bind national banks. They do not bind anybody but a national bank. Those regulations that focus heavily on limiting the duration of a letter of credit, telling an issuer it should get security, it should control renewal, those posts date, by a couple of years, the adoption of Article V. I apologize. Article V was adopted by the American Law Institute in May of 1995 at a meeting in Washington, D.C., that I happened to attend as a member of the ALI. And I'm not going to go into a lot of personal legislative history about it, but in 1995, the ALI recommended adoption of a statute that had been revised over a three- or four- or five-year period previously. Preceding that was a task force report the ABA did in 1990, chaired by, of all people, one of the folks who claims to be the institute, the amicus in this case, identified 49 critical problem areas that Article V needed to be revised to focus on in the world of letters of credit. Not a single one of those 49 issues related to duration of a letter of credit or to perpetuity. Any suggestion that this is a hot issue, that this is something that banks are trying to get around or that issuers want to evade is hot wash. In Europe, banks issue letters of credit. It's very common. In fact, in Europe, banks issue guarantees. U.S. banks don't do that. The real purpose of 5106D was to prevent the European practice of perpetual letters of credit from coming into play. It's very common in Europe to have a bank issue an L.C. in favor of its subsidiary instead of injecting capital. The L.C. just says this letter of credit shall always be available at our counters. This letter of credit shall never expire. This letter of credit shall always be in effect. That's all that the drafters try to outlaw. If an issuer wanted to have a letter of credit for a 100-year term, that's perfectly valid. It's got a stated expiration date. In fact, you don't even need a stated expiration date in a letter of credit for validity because under 5106C, if you have nothing that deals with expiration, the statute says that's a one-year letter of credit. Let's turn to the waiver argument for a moment. 5108C, which was newly added in 1995 by Article V, precludes an issuer from asserting defenses to a draw and then later thinking about additional defenses. They have a seven-day period within which to honor or dishonor a draw, provide a written notice, and assert defenses. In this case, the only defense asserted was cancellation, which is no longer before the Court, and perpetuity. Then we see affirmative defenses pled in a complaint, this waiver argument. We contended below, and we certainly did not file a cross appeal, that as a matter of law, that defense is precluded. We still think that is the case. The only exceptions the statute makes in 5108C to asserting any defense to validity of a draw are forgery, fraud, and expiration, not anything else, not waiver. And, in fact, if you look at the official comment in 5108C, it was very clear that all of these prior cases where it wasn't clear if a lender should be a stop from asserting defense or shouldn't be a stop based on whether or not they'd communicated the defense, whether the other side had awareness or knowledge, the drafters just threw it out and said, certainty, speed in a letter of credit is so important, the issuer has to assert all defenses immediately or forever be precluded and barred. This case does present an opportunity to not undermine that doctrine as well. In my view, the very discussion of waiver, which also to me makes zero sense because it's premised on the alleged invalidity of the letter of credit based upon a default judgment that the court below, and it's not been challenged, is clearly the law of the case, that Judge Hiroshige's default ruling did not invalidate, could not have canceled a letter of credit. It's hard to imagine the basis for waiver. But I think the real answer there is preclusion. Can you also address your breach of contract claim? You're not alleging that there's a contract between Golden West and the issuer, right? The letter of credit is not actually a contract, right? Your Honor, for purposes of to me the question of whether a letter of credit is also a contract under substantive State law only goes to the consequential damage issue in my view. I will answer your question. I don't want to duck your question. But I don't believe treating a letter of credit as also being a contract or deciding it's not a contract goes to any question other than scope of incidental damages under Article V versus consequential damages in contract law. But in my view, it's very, very clear in reading the official comment to Article V that it does not intend to supplant all other law. In fact, there's a comment about punitive damages, which are clearly not recoverable within Article V, where the official comment recognizes the very conduct that is not actionable for punitive damages in Article V might, under other bodies of law, lead to other measures of damages, including punitive damages. There never was an intent to supplant the field. On the other hand, in the facts and posture of this case as it exists now, I do not believe that issue is relevant because of the mootness. And similarly with the specific performance claim? Well, the specific performance is directly under Article V, Your Honor. The statute expressly authorizes a suit for specific performance. It's now a statutory remedy. And that's for if the issuer's obligation under the letter of credit is not for the payment of money, but here it is for the payment of money, correct? I don't think I read the statute the way you do. I think that specific performance is a remedy. And in fact, specific performance for the payment of money is simply enforcing – there's no differential. In other words, a suit for wrongful dishonor of a draft in the amount of $1,020,000 and a specific performance of the duty to honor an otherwise conforming draft gets the exact same damages. I don't believe there's any real difference in remedies, difference in whether it's LC law or anything else. It's just an extra cause of action that, frankly, I would concede is probably surplusage. I have a general question for you. We're here dealing with, like, a UCC provision that's enacted by a State, correct? Yes, Your Honor. So, I mean, all the States have adopted these, you know, one form or the other of the UCC. On the letter of credit issues, you know, are there any relevant differences in what States have done, if you know? Here, as I understand it, wasn't there a choice of law that was Virginia? Yes, Your Honor. Literally, but in the briefs, everyone is talking about California law and saying there's no difference. There is none. I wanted to know, on letters of credit, are there any differences on these issues nationwide? Your Honor, the Section 505108, pardon me, 5106D is absolutely uniform in all 50 jurisdictions. Unfortunately, I've read them all. There's also no case law in any of the 50 States under 5106D, which I think further illustrates how quiet and sleepy an area this is that will likely not turn into a hotbed of perpetual letters of credit. In addition, the only meaningful change and distinction in any UCC, any versions of Article V adopted in the United States is the inclusion in some jurisdictions of a section that relates to a limited power to enjoin the honoring of a draw. That – there's no difference in California or Virginia other than punctuation of the section numbers. The statutes are otherwise word for word precisely identical. I believe I am out of time. Thank you. There are several points that counsel raised I'd like to address briefly. First, the UCC's preclusion doctrine, that doctrine prevents an issuer from raising discrepancies in the timing or substance of presentation documents as a defense other than what is apparent from the face of the instrument. In this case, we don't have that situation because SunTrust's reason for dishonoring the draw were, first of all, that the credit had expired as a matter of law, not because of a defect in the presentation. And secondly, with respect to our waiver of defense, it had been canceled in July of 2001. So the preclusion doctrine of the UCC doesn't apply here. Second, Goldenbus' argument that there can be remedies other than what is prescribed in the UCC, that is true in some situations. UCC 5103B and paragraph 2 of the official comment to that section talk about situations where there is a situation not provided for in the UCC. In that circumstance, other remedies could come into play. But here, the liability for wrongful dishonor is clearly specified in UCC 5108, and the remedy for that dishonor is specifically called out in 5111. So, again, that situation does not apply. With respect to the Northeast. On that issue, counsel, maybe I misunderstood, but I thought that the appellee was saying it's more or less moot at this point, as if we say the letter of credit is still with us, you know, contrary to the perpetuity argument, that they sort of have no damages that haven't been, that are needed consequentially. If Goldenbus now believes that consequential damages are moot, I am happy to agree with him. I did not learn that from today. Well, we haven't decided the case yet, but if we were to uphold the letter of credit, but want to get consequential damages out, would we have to have some sort of stipulation on the record? No, sir. No, sir. The UCC prescribes a specific remedy for a specific liability. So 5103 doesn't apply. You do not look outside the UCC. Okay. Murphy, I think, not only has radically different facts from what we have here, but actually illustrates our point. In Murphy, there was no defect in the letter of credit itself, and the letter of credit itself was perfectly clear and appropriate under the UCC. In Murphy, what we had was a bank that issued the letter of credit in violation of a cease of desist order, and under that circumstance, the court appropriately found that it could only look to the terms of the letter of credit, and therefore, it had to enforce the letter of credit. Here, it is the terms of the letter of credit itself that tell us that the restriction of 5106D applied. Nothing in the issuer's conduct. Two other points. Counsel's remarks about European letters of credit, there is nothing in the record to support that. The only discussion of European instruments that are similar in nature in the record is in the amicus brief at ER 389-90, and the amicus brief notes that, first of all, these are not letters of credit, and second of all, they illustrate the risk that the drafters sought to avoid with 5106D, because these instruments used by European bankers eventually led to the banks searching for technical ways to dishonor them, so it introduced uncertainty into the system. Finally, the example that counsel uses where an instrument says we will pay within 90 days of delivery of the bananas on the ship to the port, that would actually fall under 5106C because it does not state an expiry date, and in that situation, the UCC limits it to a one-year term. 5106D addresses a different situation where it is clear from the language of the instrument that the parties intended the obligation to continue without limitation or control of the issuer. Thank you. I couldn't hear what counsel said there. I'm sorry, Your Honor, I wasn't sure I was allowed to talk any further, but what we were saying is we would be happy to stipulate to the complete satisfaction on the dollar-for-dollar provision of the judgment below that that, in fact, has been fully satisfied and is therefore not before the court at this point. Thank you. This case is submitted. We have three cases that are submitted on the briefs. These are Shorey's v. Mukasey, Dodd v. Raytheon Systems Company, and Russell v. Astru. Those are all submitted, and our next case is Stevens v. GCS Service, Inc.
judges: Wallace, Gould, Ikuta